The STATE of Ohio, Appellee,

v.

COLEGROVE, Appellant.

[Cite as *State v. Colegrove* (2000), 140 Ohio App.3d 306.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75705.

Decided Nov. 20, 2000.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Deborah Naiman,* Assistant Prosecuting Attorney, for appellee.

*Mark Witt,* for appellant.

KARPINSKI, Presiding Judge.

This is the second time this matter is before this court. Defendant-appellant Jerry Colegrove appeals from his bench trial conviction and sentence on two counts of kidnaping with specifications and two counts of disseminating harmful matter to juveniles. He was sentenced to a total consecutive term of sixteen and one-half years to life imprisonment, in addition to the term he already served for prior convictions on two counts of public indecency arising from the same course of conduct. We affirm the convictions, but reverse and remand for resentencing.

All the charges arose from an incident on April 30, 1997 in which defendant offered two school girls $2 to watch him masturbate on a public street while he was in his vehicle. The children walked twenty-four feet toward his vehicle, one of them took the money, the other one saw him engaging in his activity, and both fled. On May 1, 1997, the day after the incident, defendant was charged in Cleveland Municipal Court case No. 97–CRB–012797 with two counts of public indecency for masturbating in public in violation of R.C. 2907.09. He pleaded

guilty and was sentenced to thirty days in jail and fined $250. The municipal court suspended the sentence and granted defendant credit for seven days of incarceration for time served in jail.

On May 27, 1997, defendant was thereafter indicted in the case at bar, Cuyahoga County Common Pleas Court case No. CR–351205. Two counts alleged that he committed kidnaping in violation of R.C. 2905.01 by "deception or an[y] means" removing the girls from the place where they were found for the purpose of facilitating felony and/or engaging in sexual activity against their will. Each count contained a repeat violent offender, sexual motivation, and sexually violent predator specification. Defendant was also charged with two counts of disseminating matter harmful to juveniles in violation of R.C. 2907.31 for recklessly exhibiting or presenting an obscene performance, with knowledge of its character, to the juveniles.

During the course of the proceedings, defendant filed a series of motions for judgment in his favor, arguing that the charges in common pleas case No. CR–351205 were barred by his prior conviction in municipal court case No. 97–CRB–012797.[1] The prosecution filed a trial brief indicating that "[t]he State will move to dismiss the disseminating counts before trial," but opposed the motion to dismiss. Defendant filed a reply brief in support. The trial court granted defendant's motion to dismiss, stating in its journal entry as follows:

"Counts three and four [disseminating harmful matter] are dismissed based on double jeopardy. (Municipal court conviction of public indecency) counts one and two are dismissed based on double jeopardy because there is a required element that defendant had the purpose of facilitating the commission of a felony. That felony being counts three and four already dismissed."

From this dismissal entry, the prosecution filed a notice of appeal in prior court of appeals case No. 75705. In a subsequent accelerated per curiam opinion, this court reversed and remanded for further proceedings. *State v. Colegrove* (1998), 123 Ohio App.3d 565, 704 N.E.2d 645. Following remand, the matter ultimately proceeded to a bench trial commencing October 6, 1998.

The prosecution presented testimony from six witnesses. The two girls, ages eleven and twelve, respectively, on the date of the incident, testified first. K.R. testified that the incident occurred at 7:45 a.m. as she and her cousin C.R. were walking to school. She testified that she did not see the offender "jacking off,"

---

1. Defendant *pro se* filed a motion to dismiss on double jeopardy grounds. After entering an appearance, defendant's counsel filed a "motion to quash indictment or to alternatively dismiss due to double jeopardy and/or *res judicata.*" Defendant's counsel thereafter filed a "notice of pleas of former conviction and double jeopardy." Defendant's counsel also filed a "motion to add pleas of former conviction and double jeopardy, instanter."

but her cousin told her he was. The offender gave her two dollars before her cousin's comment. The prosecutor measured the distance from where defendant originally spoke to the pair to where he parked after backing up his car to be twenty-four feet. K.R. could not identify defendant in court but was asked to identify him at her school the day after the incident following his arrest. She did not know exactly what "jacking off" means and did not see the offender's penis or his legs. C.R. testified that "jacking off" means rubbing his penis. She identified defendant in court. The reason she approached defendant's car was that K.R. stated that she was going to do so.

An adult acquaintance of the two, Marie Snider, testified that she was on her way to the school when the two girls ran to her and looked afraid. Joan Dolfi, mother of C.R., testified that on the day after the incident she saw a car that fit her daughter's description of the offender's vehicle. She wrote down the license plate number of the vehicle and called the police. Cleveland Police Patrolman Thomas Wise testified that he received a report of a man trying to lure children to his automobile. He ran a computer check on the license plate number of the vehicle and identified defendant as the owner. Patrolman Wise went to defendant's house and saw his wife. Defendant's wife informed him that defendant had a meeting with a parole officer and that he was not home the previous morning.

Cleveland Police Detective Virgil Wise testified that the $2 was logged in as evidence and taken by the city of Cleveland. He saw defendant at the parole authority office and took him to the school, where both girls identified him as the offender. He identified defendant as the offender in court. Wise testified that he had been a patrolman until two and one-half weeks earlier. He proposed that charges of child enticement and public indecency be filed and wrote "child enticement" in remarks on a report. The prosecution rested its case pending the trial court's ruling on its motion to present similar other acts evidence disclosed to the court and defendant for the first time immediately prior to trial. The following day, the prosecution rested without proceeding on the motion to present other acts evidence or presenting such evidence. Defendant presented no evidence.

The trial court found defendant guilty of all four offenses, scheduled a hearing on the specifications for a later date, and referred the matter for a presentence report. Defendant subsequently made a motion for mistrial at the outset of the specification hearing.

The trial court did not expressly deny the defense motion for mistrial, but proceeded to conduct a hearing on the three specifications accompanying the kidnaping charges. The prosecutor moved to dismiss the repeat violent offender specifications because the case did not involve the necessary element of violence.

The trial court found defendant guilty of the sexual motivation specifications because he committed the kidnaping to gratify his sexual needs or desires. Finally, the prosecution presented six witnesses to support the sexually violent predator specification.

D.C. testified that twenty years earlier, on February 1, 1978, defendant and another man kidnaped and raped her. Defendant told her that they wanted to steal her car outside a convenience store, but decided to take her as a "bonus." Both men had been drinking and she knew defendant from going to the same school. Both men took turns raping her and driving around in her vehicle until a police officer stopped the vehicle and arrested them as it was getting dark at night. Defendant was convicted of kidnaping and attempted rape and sentenced to prison.

Several witnesses thereafter testified concerning incidents in Van Wert in the spring of 1985 after defendant was released on parole. Susan Bradley testified that her daughter was seven years old when a man approached her at the street corner one-half block away from her house and offered her $2 if she would get in his car with him. She ran home and notified her parents. Her father gave chase but was unable to catch the offender. However, the girl picked defendant's photograph out of an array weeks later. She stated that the incident happened on March 9, 1985, fourteen years earlier, and that the defendant was not prosecuted because he was returned to prison as a probation violator.

T.F. was sixteen years old on April 3, 1985. She was walking with her sister when defendant drove by and whistled. Defendant opened the passenger door of his car and said that he would take them where they were going. She got the license plate number of the car and gave it to her father, a sergeant with the Van Wert, Ohio police department. Although she was unable to identify defendant in court, she recalled officers presenting photographs of the offender to her the day after the incident.

Parole Officer Robin Crew testified that defendant was subsequently assigned, upon his release from prison in 1995, to a two-year sex offender program. Defendant was given excellent ratings for attendance, attitude, and participation, and his treatment goals were being met. He was still in the program when he committed the offenses in the case at bar.

Van Wert Police Sergeant Richard Fry testified that there was a separate third incident in 1985 with a girl named Crystal. Finally, Van Wert Police Lieutenant Calvin Mengerink testified that in 1985 he traced the automobile license plate number from the victim through a local auto dealership to defendant's father. He stated that he recognized defendant's name from an alert given to the department from a parole officer who informed them of parolees who reside in the area. Mengerink took a photograph of defendant, and two persons were able

to identify him as the one who approached them. Mengerink recounted the three incidents, but stated that no charges were filed.

After receiving exhibits and closing arguments, the trial court found defendant guilty of the final specification. On October 26, 1998, the trial court journalized defendant's convictions on two counts of kidnaping and two counts of disseminating harmful matter. The court found defendant guilty of all specifications, including the repeat violent offender specification which had been dismissed.

The matter thereafter proceeded to sentencing. The assistant prosecuting attorney argued that defendant had committed a prior rape, was a sexually violent predator, bribed the Van Wert children when he was on parole, and committed the offenses in the case at bar after being placed on parole five years earlier. She requested that the court enter consecutive sentences on all counts. The trial court sentenced defendant to seven years to life on each kidnaping charge and fifteen months on each disseminating charge. The court ordered that the sentences to be served consecutively, for a total sentence of sixteen and one-half years to life. Two days later the trial court conducted another hearing and explained defendant's duty to register as a sexual predator.

The following day, the trial court journalized orders correcting its prior journal entries to dismiss the repeat violent offender specifications. The trial court also journalized orders imposing sentence and defendant's duty to register if he is ever released from prison. The trial court subsequently denied defendant's motion for new trial. Defendant timely appeals, raising five assignments of error.

Defendant's first assignment of error follows:

"The evidence is constitutionally insufficient to sustain the convictions for disseminating matter harmful to juveniles, a felony, when there was no evidence of a performance."

This assignment lacks merit.

■ Defendant contends that there was insufficient evidence to support his convictions for disseminating matter harmful to juveniles in violation of R.C. 2907.31, because there was no evidence of a "performance." During the course of his argument he presents a whole grab bag of assertions.

Specifically, he contends that the statute was promulgated to prohibit commercial obscenity rather than "personal behavior." He also asserts that the offense requires distribution of some physical depiction of conduct so that the material could be widely displayed to the public. Finally, he emphasizes that he, rather than the putative viewers, paid the $2 and that one girl did not see him masturbating.

After reviewing the express terms of R.C. 2907.31, we find all his arguments unpersuasive. R.C. 2907.31 defines the crime of disseminating matter harmful to juveniles as follows:

"(A) No person, with knowledge of its character or content, shall recklessly do any of the following:

"(1) Sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile any material or performance that is obscene or harmful to juveniles;

"(2) Offer or agree to sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile any material that is obscene or harmful to juveniles;

"(3) Allow any juvenile to review or peruse any material or view any live performance that is harmful to juveniles."

Nothing in the statute supports the arguments offered by defendant. Although some terms of R.C. 2907.31 prohibit the commercial distribution of physical material that is obscene to paying audiences that observe it, there are other terms of the statute more general and not so limited. Because of the various alternatives listed, none of the particular elements the defense cites is necessary to support a conviction, provided that the prosecution presents evidence to support all the other elements expressly required by the statute.

At least one court has rejected the crux of defendant's argument and specifically held that masturbating in front of juveniles constitutes a "performance." *State v. Hanna* (May 18, 1988), Lorain App. No. 4281, unreported, 1988 WL 50453. R.C. 2907.01(K) specifically defines "performance" to mean "any motion picture, preview, trailer, play, show, skit, dance, or other exhibition before an audience." *State v. Ferris* (Nov. 17, 1998), Franklin App. No. 98AP–24, unreported, at 3, 1998 WL 808252. Exhibition includes exhibiting, showing, or presenting to view. *Id.*

As in *Hanna* and *Ferris*, defendant engaged in a performance by asking the girls to watch, opening the car door so that he could be watched, and then engaging in a sex act with the expectation of being watched.

Accordingly, defendant's first assignment of error is overruled.

Defendant's second assignment of error follows:

"Should the court find that the evidence is sufficient to sustain the convictions for disseminating, then defendant–appellant argues that the disseminating statute is impermissibly and unconstitutionally overly broad and vague."

This assignment lacks merit.

■ Defendant argues generally that the statute criminalizing the dissemination of matter harmful to juveniles is unconstitutionally overbroad. He argues

that he "expects to prevail" on the first assignment of error, but that he would request an opportunity for further briefing on this constitutional argument if he does not.

The Ohio Supreme Court unanimously rejected an overbreadth challenge to a nuisance abatement statute invoked to prohibit sexual activity at an adult bookstore in *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116. The court, adopting the opinion of the court of appeals, held that sexual activity does not involve freedom of speech or protected expression necessary to invoke an overbreadth challenge. *Id.* at 357–358, 588 N.E.2d at 120.

Specifically, the court stated:

"[W]e underscored the fallacy of seeking to use the First Amendment as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct. First Amendment values may not be invoked by merely linking the words 'sex' and 'books.'

"Therefore, since this action does not involve elements of protected speech, the overbreadth doctrine is inapplicable." *Id.*, quoting *Arcara v. Cloud Books, Inc.* (1986), 478 U.S. 697, 705, 106 S.Ct. 3172, 3177, 92 L.Ed.2d 568, 577.

We are likewise unpersuaded that masturbating in public before juveniles involves any element of protected speech to invoke a successful overbreadth challenge to the R.C. 2907.31 dissemination statute. The Second District Court of Appeals has likewise concluded that R.C. 2907.31 is not overbroad. *State v. Karindas* (May 18, 1992), Montgomery App. No. 12858, unreported, at 1, 1992 WL 103700.

Defendant had a full opportunity to brief this and any other issue he desired this court to consider as well as an opportunity to submit any additional supplemental authority he wished this court to consider. We believe that no amount of additional briefing would change these principles or alter the outcome in this case. Defendant's brief in the case at bar was only twenty-two pages in length. Local Appellate Rule 16(A) permits the filing of briefs of forty pages in length in all cases on the regular docket.

▬▬▬ Additional briefing is permissible by leave of court. The proper procedure, however, is to make a request by motion in advance, rather than in a merit brief contingent upon an adverse decision on other assignments of error. *Id.* Under the circumstances, defendant's failure to exhaust the standard forty-page allotment, or to make a proper timely request for additional briefing, warrants rejecting this assignment of error upon existing briefs.

Accordingly, defendant's second assignment of error is overruled.

Defendant's third assignment of error follows:

"The evidence is constitutionally insufficient to sustain the convictions for kidnaping, when there is no evidence of 'purpose . . . to facilitate the commission of [a] felony.' " (Ellipsis *sic.*)

This assignment lacks merit.

█ Defendant contends that the evidence was insufficient to convict him of kidnaping because there is no evidence that he had a purpose to commit a kidnaping or any felony. He also contends that any kidnaping was incidental to public indecency and not committed with a separate animus.

The Ohio Supreme Court has summarized the standard governing claims that a conviction is not supported by sufficient evidence, as follows:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in [the] light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. After examining the record in accordance with this standard, we conclude that the prosecution presented sufficient evidence to support defendant's convictions for kidnaping.

R.C. 2905.01(A) defines the offense of kidnaping as follows:

"(A) No person * * * in the case of a victim under the age of thirteen * * *, by any means, shall remove another from the place where the other person is found * * * for any of the following purposes:

"* * *

"(2) To facilitate the commission of any felony * * *."

When viewed in the light most favorable to the prosecution, the evidence the state presented showed that defendant induced the two girls, each under thirteen years of age, to approach him in his vehicle in a secluded alley, by offering them $2 to watch, for the purpose of facilitating the commission of a felony. As noted in our discussion of his first assignment of error, that felony was, at least, the dissemination of matter harmful to juveniles by exhibiting or presenting a sexual performance to them that was obscene and unsuitable for children.

The evidence showed that defendant did not masturbate in the open area of the street where he first encountered the children. If he had, we could agree with

him that there was no evidence of kidnaping. Under the circumstances, however, when viewed in the light most favorable to the prosecution, the evidence was sufficient for the trial court to find that the asportation of the children, by luring them to a more secluded area, facilitated his commission of the sex crime. Offering and paying the $2 to lure the children to the more secluded area went beyond merely disseminating matter harmful to juveniles. Disseminating such matter does not require removing the children from the place where they were found as in the case at bar.

██ Defendant's brief cites *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, which analyzed whether kidnaping and rape were allied offenses of similar import under R.C. 2941.25, and thus the defendant could be convicted and sentenced for only one offense. We believe that the argument is best raised in that context at the time of sentencing rather than at the appellate level as a question of the sufficiency of the evidence for a determination of guilt for one or more offenses.

In other words, when viewed in the light most favorable to the prosecution, the evidence presented during trial may be sufficient to support a finding of guilt for two offenses. The prosecution is not required to elect to proceed on only one charge, and the trial court may not refuse to submit either charge to the fact-finder. If, however, the fact-finder subsequently finds the offender guilty of multiple charges, but finds before sentencing that the offenses constitute allied offenses of similar import,[2] a defendant may ultimately be convicted and sentenced for only one charge.

Accordingly, defendant's third assignment of error is overruled.

Defendant's fourth assignment of error follows:

"The trial court committed reversible error when it failed to grant a mistrial in the face of the state's motion for other acts evidence which it subsequently neither corroborated nor proved, thereby allowing the introduction of prejudicial, uncorroborated information before the trier of fact."

This assignment lacks merit.

██ Defendant complains that the trial court should have declared a mistrial when the prosecution presented improper "other acts" information under Evid.R. 404(B) on the first day of trial pursuant to a motion *in limine*. He contends that the prosecution could have proffered the evidence of similar encounters by

---

2. Because we reverse the trial court's imposition of consecutive sentences and remand for resentencing, defendant may argue during resentencing that any or all offenses occurring during this course of conduct constitute allied offenses of similar import. We express no opinion in the case at bar concerning the merits of such arguments.

defendant, with children, in his car, "while the trier of fact was out of the room" and that such information was admissible only at the hearing on the specifications accompanying the charges.

Defendant's argument ignores the fact that he elected to try his case before the trial judge who also served in the dual role as finder of fact. Evid.R. 104(A) specifically provides that preliminary questions concerning the admissibility of evidence shall be determined by the trial court. The court in *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 577 N.E.2d 720, recognized that this issue frequently arises when the trial judge also serves as fact-finder:

"It must be recognized that the very nature of the duties of a judge often require him to have knowledge of inadmissible evidence. Every time he makes a ruling determining evidence inadmissible, he has to know what the inadmissible evidence consists of, and if he is the fact finder, he must eliminate [this evidence] from his consideration in determining the facts." *Id.* at 869, 577 N.E.2d at 723–724.

The Ohio Supreme Court has recognized that, in bench trials, trial judges are "presumed to consider only the relevant, material and competent evidence in arriving at a judgment unless the contrary affirmatively appears from the record." *State v. Eubank* (1979), 60 Ohio St.2d 183, 187, 14 O.O.3d 416, 418, 398 N.E.2d 567, 570.

The record in the case at bar does not affirmatively show that the trial court considered any inadmissible evidence. The record shows, to the contrary, that the trial court did not permit the prosecution to introduce any evidence concerning prior bad acts by defendant during the trial on the kidnaping and dissemination charges. The prosecution withdrew the motion and no such evidence was admitted into evidence at that time.

One court has recognized, in a case involving strikingly similar circumstances, that these principles apply even when the evidence was actually admitted during trial. See *State v. Gross* (June 10, 1992), Fairfield App. No. 25-CA-91, unreported, at 2–3, 1992 WL 147390. Under the circumstances, because no such evidence was admitted in the case at bar until after defendant's conviction of the substantive offenses (during the hearing on the specifications), defendant has failed to make even a colorable claim of reversible error.

Accordingly, defendant's fourth assignment of error is overruled.

Defendant's fifth assignment of error follows:

"Without the convictions for kidnaping, there is no constitutionally supported basis upon which to assess the penalty of the specifications and they must also be found constitutionally deficient."

This assignment lacks merit.

Defendant contends that there is insufficient evidence to support the sexual motivation and violent sexual predator specifications in the case at bar because there was no evidence to support the accompanying kidnaping convictions. He challenges not the sufficiency of the evidence to support either specification but merely the underlying predicate kidnaping convictions. We reject this argument, however, for the same reasons we rejected his third assignment of error challenging the sufficiency of the evidence to support his kidnaping convictions. When viewed in the light most favorable to the prosecution, the evidence was sufficient for the trial court to find defendant guilty of each count of kidnaping as well as the accompanying sexual motivation and violent sexual predator specifications.

Accordingly, defendant's fifth assignment of error is overruled.

 Having rejected defendant's assignments of error, we affirm the trial court's findings of guilt against him on each charge and specification. Nevertheless, we must address the sentence imposed because the trial court made an error during sentencing and it failed to make any findings or state reasons for imposing its sentence in the case at bar.

R.C. 2929.14(E)(4) generally governs the imposition of consecutive sentences when a defendant is convicted of multiple offenses. Before imposing consecutive sentences, the trial court must make the findings required by this section.

R.C. 2929.14(E)(4) provides as follows:

"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

The trial court in the case at bar did not make any such express findings and could not lawfully impose consecutive sentences on all offenses without them. R.C. 2971.03(E); *State v. Troyer* (Mar. 7, 2000), Cuyahoga C.P. No. CR–379460, unreported, 2000 WL 294822.

When the necessary statutory findings have not been made, this court has routinely required trial courts to make express findings when imposing consecutive sentences. E.g., *State v. Sanders* (Apr. 13, 2000), Cuyahoga App. No. 75398, unreported, 2000 WL 377505; *State v. Berry* (Mar. 9, 2000), Cuyahoga App. Nos. 75470 and 75471, unreported, 2000 WL 263733; *State v. Copeland* (Mar. 2, 2000), Cuyahoga App. No. 75845, unreported, 2000 WL 235758; *State v. Hendking* (Feb. 3, 2000), Cuyahoga App. Nos. 75179 and 75180, unreported, 2000 WL 126733; *State v. Stroud* (Oct. 28, 1999), Cuyahoga App. No. 74756, unreported, 1999 WL 980627; and *State v. Albert* (1997), 124 Ohio App.3d 225, 705 N.E.2d 1274.

Other districts throughout the state have reached the same result:

"[M]ore than forty consecutive sentences were reversed between May 1, 1999, and May 1, 2000, because trial judges failed to make the findings required by RC 2929.14(E)(4) or state reasons required by RC 2929.19(B)(2)(c) for imposing consecutive sentences." Ohio Felony Sentencing Law, Section 7.15, supra, at 600; see, also, *State v. Church* (1998), 129 Ohio App.3d 468, 717 N.E.2d 1194.

The record shows, moreover, that prior to the sentencing hearing the trial court found defendant guilty by journal entry of the two "repeat violent offender" specifications, which had previously been dismissed by the prosecution. This erroneous finding misapprehended the gravity of the offenses. No such finding was possible in this case because no violence or even threat of violence occurred. Specifically, defendant "released" the victims in a safe place unharmed and did not even "attempt to cause serious physical harm." R.C. 2929.01(EE). Following the hearing, the court sought to correct its prior erroneous journal entry. Without any findings regarding the sentence, we do not know whether the erroneous repeat violent offender findings influenced the sentence.

After making this error, the trial court imposed a sentence just short of the maximum for each offense and ordered them all to be served consecutively, for a total sentence of a minimum of sixteen and one-half years to life imprisonment. This sentence was also consecutive to the sentence previously imposed by the municipal court for public indecency. The trial court did not discuss any consecutive sentence provisions or whether any of the offenses constituted allied offenses. R.C. 2929.41 and 2941.25.

The prosecutor recognized during the hearing that "this kidnaping may be on the lower end of the scale." In fact, the police originally sought to charge defendant with the misdemeanor of child enticement for luring them *into* his car,

rather than felony kidnapping for luring them *next to* his car. Moreover, at the beginning of the case, the prosecutor promised in writing to dismiss the disseminating charges outright before trial. The evidence presented at trial revealed that one girl did not even see defendant masturbating, which was the matter "disseminated." Nevertheless, the prosecutor sought the maximum consecutive sentences on all charges.

The entire thrust of this case has been about whether the punishment fits the crime. Defendant argued from the beginning that he faced multiple and excessive punishment. The Ohio Revised Code contains few life sentences, which are typically reserved for homicide and violent sex offenses. Defendant emphasized that although he masturbated in front of two girls, the case did not involve rape, sexual conduct or contact with the victims, or any use of violence. Nevertheless, he has been sentenced for the maximum number and the maximum degree of offenses, he has received essentially the maximum sentence for each offense, and he has been ordered to serve them in the maximum consecutive manner.

If defendant had sought to lure the two children into his vehicle and solicited them to engage in sexual activity with him, as the police and prosecution suggested at times in this case, he would have faced four first degree *misdemeanor* convictions. For these convictions, he would have faced a total maximum consecutive sentence of *two years'* imprisonment for the crimes of child enticement, R.C. 2905.05, and importuning. R.C. 2907.07.

Instead, because defendant failed to lure the children into his car and because he masturbated but failed to solicit them to engage in sex with him, he was convicted of two *felonies* and a third misdemeanor. By luring them not into his car but only twenty-four feet to be next to his car, he committed the much more serious felony of "kidnapping," which supported specifications to raise his maximum potential sentence from six months to eight years to life. By masturbating rather than soliciting them to engage in sexual activity with him, he was convicted of both disseminating matter harmful to juveniles and public indecency, which combination raised his maximum potential sentence from six months to eighteen months plus an additional month for the extra charge.

We upheld defendant's convictions for kidnapping and disseminating by applying the statutes quite literally but recognize that the circumstances may be properly taken into account at sentencing. Compare *In re M.D.* (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, in which the Supreme Court did the opposite in a juvenile case by negating the underlying offense itself rather than tempering the resulting sentence: the Supreme Court reversed this court's holding that "playing doctor" literally constituted complicity to commit rape. Our conclusion here is consistent with both the substantive and sentencing requirements of the Revised Code. The felony sentencing statutes were amended to require trial

courts to systematically consider sentencing—and to encourage greater proportionality and consistency of punishment.

■ In the case at bar the trial court failed to provide reasons for consecutive sentences. Under the circumstances, we reverse and remand for resentencing. By recognizing these principles, we do not adopt defendant's arguments or diminish the disturbing elements of this case. As in these prior cases, nothing in this opinion should be construed to require imposing any particular sentence. The trial court is simply instructed on remand to take up where it left off, to consider these matters, and to exercise its sentencing discretion according to applicable law.

*Judgment accordingly.*

SPELLACY, J., concurs separately.

JAMES D. SWEENEY, J., concurs in judgment only and concurs in the separate concurring opinion.

SPELLACY, Judge, concurring.

I concur in full with the majority's analysis of the five assignments of error. As for the majority's *sua sponte* reversal of appellant's sentence, I concur in judgment only. Appellant did not raise the issue of sentencing in an assignment of error or otherwise challenge his sentence on appeal. While I agree that the trial court failed to satisfy the technical requirements of R.C. 2929.14(E)(4), it is my opinion that the sentence imposed was appropriate in this case.

JAMES D. SWEENEY, J., concurs in the foregoing concurring opinion.