[Cite as *State v. Thompson*, 2020-Ohio-5257.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

    Plaintiff-Appellee,            :

                              No. 109110

    v.                             :

MICHAEL THOMPSON,                            :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 12, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-633180-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian D. Kraft and Mary Weston, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Aaron T. Baker and Francis Cavallo, Assistant Public Defenders, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant Michael Thompson ("appellant") brings the instant appeal arguing that the trial court erred by admitting evidence of prior bad acts under Evid.R. 404(B) and further that the trial court's decision was not

supported by sufficient evidence and was against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} The instant matter arose after appellant contacted the Cleveland Police Department on August 20, 2018. Members of the Cleveland Police Department responded to a call for unknown trouble and went to appellant's residence at 1802 E. 13th Street, Cleveland, Ohio. Appellant came outside of his apartment and spoke with officers, at which time appellant stated that he wanted to confess to a homicide, saying that he could no longer live with himself.

{¶ 3} Appellant told the officers that he had killed a woman twenty years before and buried her on Train Avenue in Cleveland, Ohio. Following further discussion, officers transported appellant to the Homicide Unit of the Cleveland Police Department, where he was interviewed by Detectives David Shapiro and Tom Lynch. Regarding the murder, appellant stated that the victim was an African-American prostitute that he had picked up on Fulton Avenue and took her back to his Cloud Avenue home where they engaged in sexual relations.

{¶ 4} Appellant asserted that the two argued about payment and that the victim stated that she was going to make a false allegation of rape. Appellant confessed that this made him upset and that he grabbed a knife and stabbed the victim in the back of the head. He said that he then wrapped her in plastic bags and

transported her body to the intersection of Train Avenue and Richner, where he buried her in a shallow grave.

{¶ 5} Appellant sketched a map for the officers depicting where the victim's body was located. After the interview, the detectives took appellant to the location where he stated that he had buried the victim. Appellant was subsequently released while law enforcement investigated his claims. Because appellant suffered from chronic alcoholism, he was released to Lutheran Hospital.

{¶ 6} The detectives, along with the FBI, arranged to excavate the area where appellant indicated the victim's body was buried. On September 24, 2018, members of the Cleveland Police Department and the FBI were present when a body was recovered in the area where appellant indicated that he had buried the victim. The bones that were recovered were wrapped in bags and then in a sleeping bag. A necktie was observed knotted and believed to be around the victim's neck. Further, an electrical cord appeared to be wrapped around the victim's arms, a rope was wrapped around the victim's legs, and her wrists were bound.

{¶ 7} The victim's remains were sent to the Cuyahoga County Medical Examiner's Office, where an autopsy was performed along with DNA testing to identify the remains.

{¶ 8} Appellant was arrested on September 27, 2018, and transported to the homicide unit for additional questioning. The officer asked appellant about the binding found with the remains, but appellant denied any binding. Appellant was also questioned about the sleeping bag located with the remains, but he denied

wrapping the victim in a sleeping bag. Despite these denials, appellant maintained that he was the person responsible for the homicide.

{¶ 9} Law enforcement investigated the circumstances surrounding the victim's death and learned that the recovered remains belonged to an African-American female named D.G., who had last been seen alive in the summer months of 1996. At that time, D.G. had been residing with her boyfriend and daughter, Robin, in Lakewood.

{¶ 10} D.G.'s daughter, Darnita Pollard, testified about her mother's disappearance and about her mother's struggles with drug use and history of prostitution. Ms. Pollard was 21 years old when her mother disappeared. Because her mother had previously disappeared for extended periods, at times because she was in jail, Ms. Pollard waited approximately seven months to file a missing person's report. In 2009, during the investigation of Cleveland serial killer Anthony Sowell, Ms. Pollard and her sister Robin had provided DNA samples to the Medical Examiner's Office, who later compared these samples to identify D.G. from the skeletal remains.

{¶ 11} Appellant was indicted on charges of aggravated murder (prior calculation and design), in violation of R.C. 2903.01(A), aggravated murder (during commission of kidnapping), in violation of R.C. 2903.01(B), and kidnapping, in violation of R.C. 2905.01(A)(3). During the pendency of this case, appellant's counsel requested that appellant be referred for a competency evaluation. The trial

court granted the request, and appellant was evaluated and ultimately found competent to stand trial.

{¶ 12} Appellant waived his right to a jury and elected to proceed with a bench trial. Prior to trial, the state had filed a motion to use evidence of prior bad acts under Evid.R. 404(B) relating to incidents involving appellant and two other African-American females that occurred in 1989 and 1995. The trial court heard arguments on the motion and ruled that the evidence would be permitted within the scope of Evid.R. 404(B).

{¶ 13} At trial, Dr. Felo of the Cuyahoga County Medical Examiner's Office testified that D.G. had a stab wound to the right temple region of her skull, which was deep enough to penetrate her brain and was a fatal wound. Dr. Felo opined that the weapon used was a knife, wide screwdriver, or some other edged-type metal. Dr. Felo further testified that D.G. also had a stab wound to her right shoulder area, which was nonfatal. In addition, there was a superficial injury to the left side of the victim's skull, but Dr. Felo was unable to determine if this wound was related to the victim's death or was a prior injury. D.G.'s manner of death was ultimately ruled a homicide.

{¶ 14} The state presented Evid.R. 404(B) evidence relating to incidents with appellant and two separate women, one in 1989 and one in 1995. With regard to the 1989 incident, retired Cleveland Police Department Officer Dale Moran testified that appellant approached an African-American female, T.H., who was alone on the

street.  Appellant drove her to his home, where he tied her up with shoelaces.  T.H. subsequently escaped and went to the hospital, where her clothes were collected.

{¶ 15} T.H. showed police appellant's home as the place she was attacked. Police knocked on the door of the residence, and appellant answered.  Officers searched for the shoelaces that the victim stated were used in the crime, but did not locate them.  They collected a gun and a knife from appellant's home.  T.H. identified appellant as her attacker.

{¶ 16} Officer Moran testified as to what appellant told him about the incident.  Appellant stated T.H. was a prostitute, and after he had sexual relations with her, the two argued about price.  Appellant claimed that T.H. had threatened to call the police and report that he raped her, which angered him, so he tied her up and attacked her.  Appellant then stated that he went into his bedroom, grabbed his gun, came out, and hit her in the head with the gun.  He then admitted that he tied T.H. up at that point and drove her back downtown to a parking lot and released her.  He stated that he cut the strings and threw them out the window when he was driving home.

{¶ 17} With regard to the 1995 incident, the court heard testimony from Cleveland Police Officer Maria Matos, Dr. Elise Brown of MetroHealth, BCI analyst Emily Feldenkris, Prosecutor's Office Investigator Nicole Disanto, and a neighbor of the victim, Alfred Feliciano.

{¶ 18} On September 17, 1995, E.D., an African-American female, went to the MetroHealth emergency department.  She stated that a man offered her a ride and

took her to his house, where he pulled a knife on her. He forced her to undress, taped her eyes and mouth shut, taped her wrists and legs together, and sexually assaulted her. E.D. was able to escape and run to a neighbor, who called 911. The neighbor, Mr. Feliciano, testified that he observed E.D. running toward him, screaming for help, completely nude with her wrists bound.

{¶ 19} Police responded to Mr. Feliciano's residence and spoke with him, the victim, and another individual. Officer Matos took a report from E.D., and then went to appellant's residence. The police knocked on appellant's door, but there was no answer. They observed the vehicle that E.D. had described sitting in the driveway of appellant's residence and towed it as evidence. They also collected gray duct tape, a shoelace, a knife, and a sock.

{¶ 20} E.D. was then transported to the hospital. Dr. Brown testified that healthcare providers observed welts on E.D.'s wrists and legs and that adhesive remained on her body where the tape had been. A sexual assault kit was collected at the hospital.

{¶ 21} Investigator Nicole Disanto collected appellant's DNA for comparison to the sexual assault kit. BCI analyst Emily Feldenkris testified that appellant's DNA was found on E.D.'s vaginal and anal areas and in pubic hair combings.

{¶ 22} At the conclusion of the case, appellant's counsel moved for dismissal of the charges, under Crim.R. 29. The trial court dismissed the element of "prior calculation and design" from Count 1, but allowed the remainder of the charge,

which effectively reduced the charge from aggravated murder to murder. The motion was denied as to the remainder of the counts.

{¶ 23} The trial court found appellant guilty of murder, aggravated murder, and kidnapping. The court later sentenced appellant to an aggregate term of life in prison with a chance of parole after 20 years.

{¶ 24} Appellant now appeals, assigning three errors for our review:

I. The trial court erred in admitting improper character and prior bad acts evidence under Evid.R. 404(B), violating appellant's right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

II. There was insufficient evidence produced at trial to support a finding of guilt.

III. The trial court erred by finding appellant guilty against the manifest weight of the evidence.

## II. Law and Analysis

## A. Evid.R. 404(B)

{¶ 25} In his first assignment of error, appellant argues that the trial court erred by unlawfully admitting into evidence testimony and exhibits of prior bad acts. The evidence at issue involved two separate incidents against African-American females who were both bound and attacked.

{¶ 26} We review a trial court's evidentiary rulings for an abuse of discretion. *In re J.P.*, 8th Dist. Cuyahoga No. 81486, 2003-Ohio-3522, ¶ 24. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 27} Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." Similarly, R.C. 2945.59 permits the admission of other acts evidence tending to show a defendant's "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question."

{¶ 28} The Supreme Court of Ohio has set forth the following three-step analysis for determining whether other acts evidence is admissible:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶ 29} Appellant argues that the evidence was not relevant because his identity as the perpetrator was not in question and that the other acts have nothing to do with the crimes charged in the present matter. Appellant argues that any evidence of binding from the prior cases is not relevant to this case because, due to the decomposed condition of D.G.'s remains, it was not possible to tell if the ropes had been used around her body.

{¶ 30} Moreover, appellant argues that there are not enough similarities between the current case and the prior cases to demonstrate any kind of plan or scheme. Finally, appellant contends that the probative value of the other acts evidence was substantially outweighed by the danger of unfair prejudice.

{¶ 31} The state asserts that the evidence of the prior attacks was relevant and was introduced for a proper purpose under Evid.R. 404(B), to wit: to demonstrate appellant's intent, modus operandi, preparation, and plan to physically attack and bind D.G. The state argues that the facts of the prior cases are remarkably similar to the facts of the case sub judice, in that the other acts evidence tends to prove appellant's modus operandi of bringing lone females to his house, binding them, and assaulting them. The state maintains that any prejudicial effect of admission of the evidence outweighs its probative value.

{¶ 32} The use of other acts evidence to demonstrate a plan or scheme has recently been addressed by the Supreme Court of Ohio in *State v. Hartman*, Slip Opinion No. 2020-Ohio-4440. The *Hartman* court discussed the admission of other acts evidence and preclusion of improper character evidence, stating:

> Courts have long struggled with differentiating between the two types of evidence. This is in large part because "other-act evidence is usually capable of being used for multiple purposes, one of which is propensity." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir.2014) (en banc) (applying Fed.R.Evid. 404(b), which is substantively analogous to Ohio's Evid.R. 404(B)). For that reason, it is "not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. The rule is concerned not only with the ultimate justification for admitting the evidence but also "with the chain of reasoning that supports the non-propensity purpose for admitting the

> evidence." *Id.* To properly apply the rule, then, courts must scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences. *Id.*

*Hartman* at ¶ 23.

{¶ 33} In *Hartman*, the defendant was charged with raping a female acquaintance in her hotel room. In order to counter defendant's denial and version of events, the state presented evidence of the defendant's having entered the bedroom of his 12-year-old stepdaughter to molest her. The defendant was found guilty, but his conviction was reversed by this court after the panel found that the other acts evidence was improperly admitted.

{¶ 34} On review, the Ohio Supreme Court upheld the ruling of this court, holding that the evidence of the defendant's other acts constituted impermissible propensity evidence. The court noted that "[the defendant's] having entered the bedroom of his 12-year-old stepdaughter does not support an inference that [he] entered [the victim's] hotel room with the intent to rape her." *Id.* at ¶ 63. This inference, that the defendant preys on sleeping or impaired females, is not permitted by Evid.R. 404(B).

{¶ 35} The state attempted to make a similar inference here — that appellant has a propensity to bind and attack women. In applying the test set forth above, we find that the evidence of the prior attacks by appellant was not relevant in this matter. As noted by the *Hartman* court, the proper question is not whether the evidence of other bad acts is relevant to the ultimate determination of guilt.

*Hartman*, Slip Opinion No. 2020-Ohio-4440, at ¶ 26. "[T]he relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute." *State v. Smith*, Slip Opinion No. 2020-Ohio-4441, ¶ 37, citing *Hartman* at ¶ 26-27; *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The Evid.R. 404(B) evidence is required to be "probative of a 'purpose other than the person's character or propensity to behave in a certain way.'" *Hartman* at ¶ 26, quoting *Gomez*, 763 F.3d at 860 (7th Cir.2013).

{¶ 36} The evidence offered in this matter goes strictly to attempt to demonstrate that appellant has a propensity to bind women. Further, the evidence cannot be used for the nonpropensity purposes cited by the state, to wit: modus operandi, plan, or scheme. A modus operandi provides a "behavioral fingerprint" for the other acts, which can be compared to the behavioral fingerprint for the crime in question. *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994). The state may use a common modus operandi to prove identity by showing that the accused has committed similar crimes and used the same distinct, identifiable scheme or plan as was used in the commission of the charged offense. *Id.*, citing *State v. Smith*, 49 Ohio St.3d 137, 141, 551 N.E.2d 190 (1990). Consequently, evidence of a modus operandi is generally used only if the identity of the perpetrator is at issue. *Id.*; *see also Hartman* at ¶ 39. Because appellant confessed to killing D.G., identity is not an issue.

{¶ 37} Further, with regard to use of other acts to demonstrate a plan or scheme, the *Hartman* court stated as follows:

> Evidence of a plan or common design "refers to a larger criminal scheme of which the crime charged is only a portion." [*People v.*] *Barbour*, 106 Ill.App.3d [993,] 999, 436 N.E.2d 667 [(1982)]. Thus, * * * evidence of a common design will more often be relevant to show the motive for the crime charged, *see* McCormick, *Evidence*, Section 190, at 448-449 (2d Ed.1972).
>
> Common-plan evidence generally concerns events that are "inextricably related" to the crime charged. Weissenberger [Federal Evidence,] Section 404.18; [*State v.*] *Curry*, 43 Ohio St.2d [66,] 73, 330 N.E.2d 720. The other acts form the "immediate background" of the present crime: they are typically either part of the "same transaction" as the crime for which the defendant is on trial or they are part of "a sequence of events" leading up to the commission of the crime in question. Weissenberger at Section 404.18. * * *

*Id.* at ¶ 40-41.

{¶ 38} Thus, other acts evidence is admitted to demonstrate the larger plan or scheme to which the current crime is connected and is relevant to show motive, identity, and/or intention, if any are disputed. *Id.*, citing McCormick at 448-449.

{¶ 39} The other acts evidence in this matter did not constitute evidence of a common plan or scheme. The attacks of the other women took place years prior to when appellant stated that he killed D.G. There is no direct connection between the other acts and the charged crime, and the evidence therefore does not demonstrate a plan or scheme. *See Smith*, Slip Opinion No. 2020-Ohio-4441, at ¶ 41.

{¶ 40} As noted above, identity is not an issue in the instant matter. Further, the other acts evidence was not admissible to establish motive. Appellant's prior acts of binding and attacking women does not provide any evidence of any motive

to bind and attack D.G. beyond that which can be inferred from any other attack and binding of a victim. *See id.* at ¶ 49. Moreover, appellant did not claim that the harm done to D.G. was the result of a mistake or accident; thus, the other acts were not admissible to demonstrate intent.

{¶ 41} Accordingly, the other acts evidence was not relevant nor was it presented for a legitimate purpose under Evid.R. 404(B) and should not have been admitted in this matter. We note, however, that appellant elected to try his case before the trial judge who also served in the dual role as finder of fact. The Supreme Court of Ohio has recognized that, in bench trials, trial judges are "'presumed to consider only the relevant, material and competent evidence in arriving at a judgment unless the contrary affirmatively appears from the record.'" *State v. Colegrove*, 140 Ohio App.3d 306, 317, 747 N.E.2d 303 (8th Dist.2000), quoting *State v. Eubank*, 60 Ohio St.2d 183, 187, 398 N.E.2d 567 (1979).

{¶ 42} While the other acts evidence was admitted during the trial, the record in this case does not affirmatively show that the trial court considered any inadmissible evidence. Indeed, in rendering his finding of guilt, the trial judge stated that "I think there was plenty of information here, even without the 404(B), that in those bags were several ropes, she was tied up."

{¶ 43} Accordingly, we agree the other acts evidence was admitted in error but find the error was harmless because the trial court, as the trier of fact, did not consider any improper evidence. Appellant's first assignment of error is overruled.

## B. Sufficiency of the Evidence

{¶ 44} In his second assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motions because his convictions were not supported by sufficient evidence.

{¶ 45} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

> The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

*Cleveland v. Battles*, 8th Dist. Cuyahoga No. 104984, 2018-Ohio-267, ¶ 12.

{¶ 46} Appellant asserts that, with regard to the charges of kidnapping and murder during the course of kidnapping, the physical evidence was inconclusive. Appellant argues that the ropes found with D.G.'s remains could have been placed there postmortem. Appellant further asserts that it is plausible that D.G. and appellant engaged in a wholly consensual encounter, that could have even included consensual rope binding.

{¶ 47} The state points out that evidence was presented demonstrating that D.G.'s remains were found with binding wrapped around her wrists, legs, and neck.

{¶ 48} We find that there was sufficient evidence to support a conviction of kidnapping and murder in the course of kidnapping. Kidnapping is a violation of R.C. 2905.01(A)(3), which provides that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person" with the purpose to "terrorize, or to inflict serious physical harm on the victim or another." Appellant was further charged with aggravated murder under R.C. 2903.01(B), with the state alleging that he purposely caused the death of D.G. "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit," kidnapping.

{¶ 49} Having viewed the evidence presented at trial in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of R.C. 2905.01(A)(3) and 2903.01(B) proven beyond a reasonable doubt. There was testimony by the medical examiner and other forensic witnesses that the binding was around the limbs and neck of D.G. This evidence was sufficient to establish that appellant restrained D.G.'s liberty in order to inflict serious physical harm upon her and further purposely caused her death while doing so.

{¶ 50} Appellant further asserts that there was insufficient evidence to support his conviction of murder in violation of R.C. 2903.02(A). To obtain a conviction under this statute, the state was required to prove that appellant purposely caused the death of D.G.

{¶ 51} The evidence presented showed that appellant used a knife to stab D.G. in the right temple region of her head and also inflicted other nonfatal wounds. Moreover, there was evidence that D.G.'s body was bound. From this evidence, the factfinder could infer purpose. *See State v. Franklin*, 11th Dist. Geauga No. 2010-G-2979, 2012-Ohio-1267, ¶ 100. In addition, while appellant stated that he attacked D.G. with the knife to stop her from making a false report of rape, the factfinder in this case was free to disregard appellant's version of events. "The trier of fact is free to believe or disbelieve all, part, or none of each witness's testimony." *State v. Williams,* 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, ¶ 67, citing *State v. Sheppard*, 1st Dist. Hamilton No. C-000553, 2001 Ohio App. LEXIS 4590, 22 (Oct. 12, 2001).

{¶ 52} We find that there was also sufficient evidence to support appellant's conviction of murder, and appellant's second assignment of error is overruled.

### C. Manifest Weight of the Evidence

{¶ 53} Finally, appellant argues that his convictions were against the manifest weight of the evidence.

{¶ 54} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-

Ohio-3598, ¶ 13. In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, quoting *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.). *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

{¶ 55} Appellant contends that the greater weight of the evidence produced at trial established that appellant killed D.G., but that he did so in a fit of anger as a result of her threat to file a false rape allegation against him. Appellant acknowledges that the physical and forensic evidence presented in this matter establish D.G.'s death, the location and condition of her remains, and the method by which she was killed; however, everything else that transpired that night could only be testified to by appellant. Appellant asserts that the state was unable to contradict his firsthand statements and instead merely offered supposition and speculation.

{¶ 56} We simply cannot say that the trial judge lost his way in believing the case presented by the state and disregarding the self-serving statements made by appellant. "A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *Williams*, 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, at ¶ 67, citing *State v. Raver*, 10th Dist.

Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21.  Moreover, a conviction is not against the manifest weight of the evidence simply because the trier of fact chose to believe the state's version of events over that of the appellant.  *Id.*, citing *State v. Williams*, 10th Dist. Franklin No. 08AP-719, 2009-Ohio-3237, ¶ 17.

{¶ 57} This is not an exceptional case in which the evidence weighs heavily against the convictions.  Accordingly, we cannot say that appellant's convictions were against the manifest weight of the evidence, and appellant's third assignment of error is overruled.

### III. Conclusion

{¶ 58} After thoroughly reviewing the record, we affirm the judgment of the trial court.  The trial court erred by admitting other acts evidence; however, the error was harmless because the evidence was not ultimately considered by the court in rendering its decision.  Appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
RAYMOND C. HEADEN, J., CONCUR