[Cite as *State v. Daniels*, 2015-Ohio-5348.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150042 |
| | | TRIAL NO. 14CRB-1691 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LARRY DANIELS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed from is:  Affirmed as Modified

Date of Judgment Entry on Appeal:  December 23, 2015

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Christopher Liu*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Defendant-appellant Larry Daniels appeals from the judgment of the Hamilton County Municipal Court convicting him of theft after a plea of guilty.  As part of his sentence, the trial court ordered Daniels to pay restitution in the amount of $1950 to the owner of the apartment building where the theft occurred.

{¶2}   Daniels raises five assignments of error.  He argues that his plea was not knowingly, intelligently, and voluntarily entered, because there was no agreement on the facts and because the court did not inform him of the amount of restitution he would be required to pay.  He also challenges the imposition of restitution as a financial sanction and the amount of restitution imposed.  For the reasons that follow, we affirm the trial court's imposition of restitution but modify the amount.

## I. Background Facts and Procedure

{¶3}   Daniels was charged with criminal damaging, criminal trespass, and theft in a misdemeanor indictment.  These charges related to acts occurring on January 10, 2014, inside an apartment building owned by Roy Jason.  Daniels was employed to do maintenance work inside the apartment building and also lived in an apartment in the building.  The theft count, as set forth in the indictment, involved unspecified "business property," and because the offense was charged as a first-degree misdemeanor, the value of the property was alleged to be an amount no more than $1000.

{¶4}   The city and Daniels reached an agreement providing that Daniels would plead guilty to the theft offense in exchange for the dismissal of the other

counts. At the plea hearing, the trial court advised Daniels that the maximum penalty for the theft was 180 days in jail and up to $1000 in fines.

{¶5} The prosecutor read the facts and alleged that on January 10, 2014, Daniels was observed removing "refrigerators, sinks, pipes, and other materials" from inside the apartment building without permission of the owner and that some of those items were found strewn around the building but that other items had not been recovered. Defense counsel interrupted and warned the court that the plea was in jeopardy. He claimed that the prosecutor had indicated in plea negotiations that the items that Daniels had been involved in removing had been recovered on the property, as Daniels claimed that he was in the process of taking the items but did not ultimately take anything from the premises. The court then asked the state if it were seeking restitution. The prosecutor replied that the state would be seeking restitution, but that it would leave the issue for the court to decide at a restitution hearing at which Jason would testify.

{¶6} Based on the prosecutor's reply, the court then told defense counsel that some restitution might be ordered based on the outcome of the restitution hearing and asked if there was still a plea agreement. Defense counsel again stated that his understanding was that Daniels did not get away with any property, but some property may have been damaged in Daniels's attempt to remove it. Counsel also clarified that Daniels was not admitting to taking any items on dates other than January 10, 2014. The court reiterated that there would be a restitution hearing to resolve the issue of the proper amount of restitution. Defense counsel expressed agreement. The court then accepted Daniels's guilty plea to the offense of theft, and noted that the amount of restitution was in dispute.

{¶7} After accepting the plea, the court immediately moved to sentencing. During allocution, Daniels told the court that he "didn't take anything." The court reminded Daniels that he had just pleaded guilty to theft and that he committed a theft by exerting control over property that was not his, even if he may not have successfully removed the property from the building. The investigating officer then informed the court that to obtain scrap metal, Daniels had damaged sinks and removed items from the apartments. Jason, the property owner, addressed the court and said that he had no insurance to cover the loss and that he had not yet determined the amount of his loss.

{¶8} The court then sentenced Daniels to 180 days in jail, credited him with the 30 days that he had served, suspended the remaining 150 days, and placed him on community control for one year. Daniels was also ordered to pay restitution in an amount to be determined at a restitution hearing.

{¶9} At the restitution hearing, held a month later, Jason testified that had inventoried the premises of his apartment building about a week before Daniels was caught removing property. He said his loss from the theft on January 10, 2014, involved three refrigerators, three stoves, two wall sinks, two cabinet sinks, and some pipes. Further, his estimated cost of replacement was based on the cost to purchase used items from a resale store that he had used during more than a decade of experience in rehabbing apartment buildings. He claimed that the refrigerators and stoves were missing and would cost $200 each to replace; that the two wall sinks— one missing and one damaged—needed to be replaced, at a cost of $150 each; that two cabinet sinks—one missing and one damaged—needed to be replaced, at a cost of $225 each, for a total of $1950. Jason could not quantify the cost of replacing the missing piping, so he sought no restitution for that item.

{¶10} The trial court ordered the full amount of restitution that Jason requested. At that point, and for the first time, Daniels informed the court through counsel that he was on disability and that did not have the financial means to pay the ordered restitution. The court declined to find Daniels indigent and maintained that he had to pay restitution.

{¶11} Subsequently, the trial court journalized the judgment of conviction in a final order from which Daniels now appeals.

## II. Validity of the Guilty Plea

{¶12} In his first assignment of error, Daniels argues that the trial court erred by accepting his guilty plea, because it was not knowingly, intelligently, and voluntarily entered.

{¶13} For a plea to be valid, it must be made knowingly, voluntarily, and intelligently. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25, citing *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). To ensure that a defendant's plea is made knowingly, voluntarily, and intelligently, the trial court must engage the defendant in a colloquy as set forth in Crim.R. 11. *See Clark* at ¶ 26.

{¶14} Daniels pleaded guilty to theft, a first-degree misdemeanor, which allows for a maximum jail term of not more than 180 days. Because the offense entails a penalty of not more than six months of jail time, it is a "petty misdemeanor" offense. Crim.R. 2(D).

{¶15} Because the offense is a petty misdemeanor, the trial court was required pursuant to Crim.R. 11(E) to inform Daniels only of the effect of the plea. Here, the trial did that. The court told Daniels that his "plea of guilty to the charge of theft * * * means you're making a complete admission of guilt to that offense." *See* Crim.R. 11(B)(1). The

court then asked Daniels if he understood the meaning of the plea of guilty, and he replied, "Yes."

{¶16} The more "elaborate" procedures for accepting pleas in felony cases and in serious misdemeanor cases did not apply. *See State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 12; *State v. Anderson*, 1st Dist. Hamilton Nos. C-050785 and C-050786, 2006-Ohio-4602, ¶ 30. Thus, Daniels's argument that his plea was defective because the court failed to comply with these more stringent requirements is meritless.

{¶17} Ultimately, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea respresents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In this case, the trial court made it abundantly clear to Daniels that the amount of restitution was in dispute and would be resolved at a restitution hearing, and that the effect of his plea was the complete admission of guilt to the theft offense. Daniels did not disavow his guilt in committing the theft offense, and he maintained his plea of guilty despite knowing that the amount of restitution was in dispute. On this record, we conclude that Daniels's plea was knowingly, intelligently, and voluntarily entered. Accordingly, we overrule the first assignment of error.

### III. Restitution

{¶18} Daniels's remaining four assignments of error address the court's award of restitution in the amount of $1950.

{¶19} *Restitution may exceed the maximum property value corresponding to a theft offense.* In his second assignment of error, he argues that the amount of restitution ordered must be less than $1000, because he was convicted of a first-degree-

misdemeanor-theft offense, which as defined by statute involves stolen property valued at less than $1000. *See* R.C. 2913.02(B)(2). In other words, he contends that the amount of restitution is limited and defined by the degree of the theft offense. The state argues that the amount of restitution could exceed the maximum property value corresponding to the first-degree-misdemeanor-theft offense.

{¶20} In support of his argument, Daniels cites *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423. In *Lalain*, the defendant had worked as an engineer for a company that designed aviation and aerospace components before resigning and taking with him the property of his employer, including proprietary and intellectual property. *Lalain* at ¶ 6. Based on this conduct, he pleaded guilty to an amended indictment for fifth-degree-felony theft of property valued at $500 or more but less than $5000. *Id.* at ¶ 10.

{¶21} The trial court awarded Lalain's former employer restitution of $63,121. *Id.* at ¶ 14. This amount did not include the value of the property stolen, as all of the property had been recovered by the police. *Id.* at ¶ 4. Instead, this amount was based on the cost to the employer, as represented in a letter submitted to the court, for the time spent by employees to identify and value the stolen but recovered property. *Id.* Even though Lalain disputed this amount, the trial court did not hold a restitution hearing. *Id.*

{¶22} Lalain's appeal to the Eighth District Court of Appeals was not successful. That court rejected Lalain's arguments that he was entitled to a hearing, and that the amount awarded did not reflect direct economic loss from the theft and it exceeded the property value that corresponded to the degree of the theft offense to which he had pleaded guilty. *Lalain* at ¶ 15.

{¶23} The Ohio Supreme Court reviewed the case and reversed the judgment for two reasons. First, the court held that the trial court's failure to hold a restitution hearing was erroneous, because Lalain's objection to the amount of restitution rendered a hearing mandatory. *Id.* at ¶ 25. Second, the court held that the restitution awarded included "consequential costs," *id.*, and these expenditures fell outside the scope of the statute authorizing restitution, R.C. 2929.18(A)(1), which limited restitution to "the amount of economic detriment suffered by the victim as a direct and proximate result of the commission of the offense" *Id.* at ¶ 22.

{¶24} The Supreme Court, however, rejected Lalain's broad argument that the amount of restitution was limited to the property value that corresponded to the degree of his theft offense. *Id.* at ¶ 24. As the *Lalain* court recognized, the amount of restitution in a felony case is limited by R.C. 2929.18(A)(1). *Id.* at ¶ 22.

{¶25} Logically, we conclude that R.C. 2929.28(A)(1), the reciprocal provision to R.C. 2929.18(A)(1) that applies to misdemeanor offenses, limits the amount of restitution in misdemeanor cases. Thus, we hold that the amount of restitution in this case was restricted to "the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *See* R.C. 2929.28(A)(1); *see also* R.C. 2929.01(L).

{¶26} Therefore, we reject Daniels's broad argument that the amount of restitution for a first-degree-misdemeanor-theft offense must always be less than $1000. But we find error in the amount of restitution awarded in this case for a different reason.

{¶27} *Restitution may not exceed the economic loss caused by the offense.* Essentially, the amount of restitution erroneously exceeded the amount of economic

loss caused by the theft offense, as Jason presented no evidence of his economic loss other than the amount it would cost to replace the property.

{¶28} In explanation, we note that the degree of a theft offense is defined by the element of the value of the property or services involved. R.C. 2913.02. Courts use one of three methods to value that property or services, as required by R.C. 2913.61(D). *State v. Chaney*, 11 Ohio St.3d 208, 210, 465 N.E.2d 53 (1984).

{¶29} Here, the business property involved in the theft offense fell under the description set forth in R.C. 2913.61(D)(2), which includes "* * *equipment[] and fixtures used in the * * *business * * * of its owner" that "retains substantial utility for its purpose regardless of its age or condition," and that are not heirlooms or collector's items. This type of property is valued based on "the cost of replacing the property with new property of like kind and quality."

{¶30} The replacement value defined in R.C. 2913.61(D)(2) is differentiated in the statute by an "amount that would compensate the owner for the loss," R.C. 2913.61(D)(1), which is the measure for "heirlooms" and the like, and from the "fair market value," which is the measure for real or personal property that is not defined in the first two subdivisions of R.C. 2913.61(D). R.C. 2913.61(D)(3).

{¶31} Thus, in this case, because of the type of property involved and the application of R.C. 2913.61(D), the trial court found Daniels guilty of the theft of business property with a *replacement value* of less than $1000. In theory, Jason could seek more than that amount in restitution, but in doing so, he could not properly seek to *increase the replacement value* of the property, as that would have resulted in Daniels's conviction for a different offense and a violation of R.C. 2929.28(A)(1)'s limitation of restitution to "the amount of economic loss suffered by

the victim as a direct and proximate result of the commission *of the offense.*" (Emphasis sic.)

{¶32} Importantly, Jason's evidence of economic loss was limited to the replacement value of the property involved. And Daniels did not agree to pay a greater amount of restitution as a part of the negotiated plea. *See State v. Savage*, 4th Dist. Meigs No. 15CA2, 2015-Ohio-4205, ¶ 19. Under these circumstances, Jason's restitution was restricted to an amount less than $1000. Accordingly, for this reason, we sustain the second assignment of error.

{¶33} *Amount of restitution established by a preponderance of the evidence.* In his fourth and fifth assignments of error, which we address next, Daniels essentially contends that Jason's testimony at the restitution hearing was not credible, because Jason did not provide verification of his out-of-pocket losses such as written estimates or quotes.

{¶34} We disagree that Jason was required to provide written estimates or quotes to verify his economic loss. The relevant statute provides that "[t]he court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing the property, and other information." R.C. 2929.28(A)(1). The statute further provides, of particular relevance here, that if the court holds an evidentiary restitution hearing, "at the hearing the victim * * * has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender." *Id.*

{¶35} Nothing in this statute required Jason to verify his testimony with written estimates or quotes. He was required, however, to establish the amount of economic loss by a preponderance of the evidence. His testimony concerning the

replacement value of the items missing or damaged was based on his significant experience replacing the property, which provided him with the relevant knowledge. Daniels did not challenge this experience or knowledge at the restitution hearing. Therefore, we conclude the trial court had an evidentiary basis to find by a preponderance of the evidence that Jason suffered $1950 in economic loss as a direct and proximate result of Daniels's commission of the theft. Accordingly, we overrule the fourth and fifth assignments of error.

{¶36} *R.C. 2929.19(B)(5) does not apply to misdemeanor sentencing.* In his third assignment of error, Daniels contends that the trial court erred by imposing restitution, because it failed to inquire to some degree into Daniels's professed inability to pay as required by R.C. 2929.19(B)(5). This statute expressly requires the court in felony cases to "consider the offender's present or future ability to pay" before imposing a financial sanction under R.C. 2929.18.

{¶37} The state notes, however, that Daniels was convicted of a misdemeanor, and the court imposed a financial sanction under R.C. 2929.28, not R.C. 2929.18. We hold that because Daniels was not sentenced for a felony offense, the mandate of R.C. 2929.19(B)(5) did not apply.

{¶38} The state also contends the trial court has no obligation to consider a defendant's present and future ability to pay restitution for a misdemeanor offense, because the misdemeanor sentencing statutes do not contain a provision identical to R.C. 2929.19(B)(5).

{¶39} The state is correct that the misdemeanor sentencing statutes do not contain a provision identical to R.C. 2929.19(B)(5). Other appellate districts have read R.C. 2929.28(B) as requiring the sentencing court to consider the defendant's present and future ability to pay a financial sanction such as restitution. *See, e.g.*,

11

*State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-060, 2014-Ohio-2238, ¶ 34; *State v. Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, ¶ 15.

{¶40} We do not need to determine whether R.C. 2929.28(B) required the trial court to consider Daniels's present or future ability to pay, because the record in this case demonstrates that the trial court in fact did consider Daniels's ability to pay. The trial court presided over the sentencing hearing at which information concerning Daniels's work history and income source was presented, and the court expressly rejected a finding of indigency. Because the record does not demonstrate the error assigned, we overrule the third assignment of error.

### Conclusion

{¶41} Accordingly, because of our resolution of the second assignment of error, we modify the trial court's judgment to reflect the imposition of restitution in the amount of $999. In all other respects, the trial court's judgment is affirmed.

*Judgment affirmed as modified.*

**DEWINE** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.