[Cite as *State v. Ward*, 2019-Ohio-4148.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-180350 |
| | | C-180387 |
| Plaintiff-Appellee, | : | C-180388 |
| | | TRIAL NOS. C-17CRB-32545 |
| vs. | : | C-18TRD-1685 |
| | | C-18TRD-11877B |
| STEVEN WARD, | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  October 9, 2019


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan* and *Scott M. Heenan*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}   Steven Ward appeals his convictions, following a bench trial, for failing to comply with an order or signal of a police officer and driving under a Financial Responsibility Act ("FRA") suspension.  Ward also appeals his conviction, following a guilty plea, for driving under a 12-point suspension.

{¶2}   Ward raises several issues on appeal—including challenges to the trial court's proceeding with a bench trial, defense counsel's failure to file a timely jury demand, the weight of the evidence, and the trial court's acceptance of his guilty plea.  Finding no merit to any of these arguments, we affirm.

## *Pretrial and Trial Proceedings*

{¶3}   When Ward was arraigned on the failure-to-comply and FRA-suspension offenses, he entered not guilty pleas and the matter was scheduled for a bench trial.  Counsel filed a form designating himself as trial counsel.  When Ward later failed to appear for trial, a capias was issued and counsel was permitted to withdraw.

{¶4}   Later, Ward appeared with new counsel at a pretrial conference, and counsel requested that "all three groups of cases" be scheduled for a bench trial.   On the date set for trial, the court informed Ward that counsel had contacted the court to report that he was unable to attend.  The court asked Ward if he agreed with counsel's request that the matter be scheduled for a pretrial conference two days later, and Ward replied affirmatively.

{¶5}   At the next pretrial conference, counsel asked that the matter be referred for a new trial date.   The matter was again scheduled for a bench trial.

{¶6} On the morning of trial, counsel requested a continuance, stating that Ward had informed him that "he wants a jury trial." Counsel acknowledged that no jury demand had been filed. After the court denied the requested continuance, counsel moved to withdraw, arguing that since his client wanted a jury trial, he would be giving ineffective assistance if he proceeded to trial. The court denied the motion, and the matter proceeded to a bench trial.

{¶7} At trial, Amberley Village Police Sergeant Brandon Gehring testified that on November 25, 2017, at about 8:00 p.m., he was stopped at the intersection of East Galbraith and Ridge Roads when he noticed a maroon Dodge truck travelling northbound on Ridge Road. Gehring recognized the truck because Ward had been driving it on September 8, 2017, when Gehring had cited him for driving under suspension and for speeding.

{¶8} Gehring turned onto Ridge Road and got directly behind the truck as it was about to turn onto westbound Ronald Reagan Highway. A check of the truck's registration revealed that the truck was not in Ward's name, but there were three active warrants "attached" to that truck for Ward. Gehring testified that the sole occupant of the truck appeared to be Ward: "I could only see him from the back, but he had his long, dark hair and it was down."

{¶9} Gehring activated his emergency lights and siren. As the truck slowed and pulled over to the right on the entrance ramp to the highway, the driver looked into the driver's side mirror. Gehring said that he was about 20 feet from the driver's side mirror, and that he had a clear view of the driver. According to Gehring, "I could see that he had facial hair and confirmed 100 percent that it was Mr. Ward."

{¶10} Ward did not bring the truck to a complete stop, and, instead, got back into the lane of travel on the highway and began to speed away. Gehring followed the truck for over a mile, but turned off his emergency lights and stopped his pursuit when the truck's speed increased to 100 m.p.h. and Ward had driven onto the right berm to pass other vehicles. The truck went out of Gehring's sight.

{¶11} Gehring exited from the highway at the next exit, which had two left-turn lanes and a single right-turn lane. Gehring saw Ward's truck in the far left-turn lane as it was stopped behind another car at the traffic light. Gehring drove into the right lane so that he "could get closer to the vehicle and confirm who the subject was driving." Gehring stated, "That time I got parallel with the vehicle and confirmed Mr. Ward was driving the vehicle." Gehring estimated that he was about 70 feet away from Ward.

{¶12} Gehring testified that he had a clear view of Ward, and that "it was light out." Although it was 8:00 p.m. on a late November evening, Gehring stated, "[F]rom my recollection[,] I could still see. We're under lights, so like I said it was still light out to where I could see."

{¶13} When the traffic light turned green, Ward drove away. Gehring did not attempt to effectuate a traffic stop because he was no longer in his jurisdiction and decided that he would assign warrants and charges later.

{¶14} When Gehring looked up Ward's driving status, he learned that Ward's driver's license was suspended. Records from the Ohio Bureau of Motor Vehicles demonstrated that, on the date of the offense, Ward's driver's license had eight different active suspensions, including an FRA suspension. Gehring charged Ward with failure to comply and driving under an FRA suspension.

{¶15} Kanishia Moton, Ward's fiancée, testified that Ward had been with her at her mother's home on Westwood in Cincinnati on the date of the offense, so he could not have been on Ridge Road.

{¶16} Ward testified that he was not driving the truck at the time of the offense and that he did not know who was. He acknowledged that "probably like a month before" the offense, Officer Gehring had pulled him over when he was driving the same truck.

{¶17} The trial court found Ward guilty of both the failure-to-comply and FRA-suspension offenses. Then Ward entered a guilty plea to driving under a 12-point suspension, an offense that occurred in March 2018, in exchange for the state's dismissal of another driving-under-suspension charge.

{¶18} Ward now appeals, raising four assignments of error for our review.

### Bench Trial

{¶19} In his first assignment of error, Ward argues that the trial court committed structural error by violating his right to autonomy under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Specifically, Ward asserts that by ordering the failure-to-comply and FRA-suspension charges to proceed to a bench trial, the court denied his right to choose to have a jury trial.

{¶20} First, we point out that Ward was not entitled to a jury trial for the offense of driving under an FRA suspension, an unclassified misdemeanor, so the trial court did not err in conducting a bench trial with respect to that offense. *See State v. Howell*, 1st Dist. Hamilton Nos. C-160679 and C-160680, 2017-Ohio-7182, ¶ 15. Ward was entitled to a jury trial for the failure-to-comply offense, but because it

was a petty offense, he was required to file a timely written demand for a jury trial to secure that right. *Id.* at ¶ 10, citing *State v. Tate*, 59 Ohio St.2d 50, 52, 391 N.E.2d 738 (1979); Crim.R. 23(A).

{¶21} Crim.R. 23(A) requires the jury demand to be "in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later." Under the rule, the failure to file a timely written jury demand results in a "complete waiver" of the right to a jury trial. In this case, it is undisputed that no timely written jury demand was filed prior to trial.

{¶22} Ward points out that prior to trial, defense counsel informed the court that Ward wanted to have a jury trial. He asserts that, by denying counsel's requests for a continuance and to withdraw as counsel, the trial court denied Ward his constitutional right to autonomy, "specifically, to choose to have a jury trial." Ward contends that, under the United States Supreme Court's decision in *McCoy v. Louisiana*, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018), the trial court's violation of his Sixth Amendment autonomy right resulted in structural error.

{¶23} In *McCoy*, the Supreme Court held that the Sixth Amendment was violated when defense counsel conceded the defendant's guilt during his capital trial even though the defendant had "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *McCoy* at 1505. In so holding, the court recognized that while defense counsel has control over trial-management decisions, some decisions "are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* at 1508. The defendant's autonomy is violated when defense counsel

acts contrary to the defendant's express defense objective. *Id.* at 1509. The court concluded that structural error resulted when the trial court allowed defense counsel to usurp control of a decision solely within the defendant's prerogative. *Id.* at 1511.

{¶24} The defendant in *McCoy* opposed counsel's "assertion of his guilt, at every opportunity, before and during trial, both in conference with his lawyer and in open court." *Id.* at 1504. In this case, however, the record contains no evidence that Ward had instructed defense counsel to request a jury trial at any time prior to the trial date or that counsel had overridden or ignored Ward's autonomy. On the contrary, defense counsel conveyed Ward's wish to the trial court and requested a continuance.

{¶25} Consequently, the trial court did not violate Ward's right to autonomy when it proceeded to a bench trial. By failing to file a timely demand, Ward waived his right to a jury trial on the failure-to-comply charge. *See* Crim.R. 23(A). We overrule the first assignment of error.

### Effective Assistance of Counsel

{¶26} In his second assignment of error, Ward argues that he was denied the effective assistance of trial counsel where counsel failed to file a jury demand at his request. To prevail on an ineffective-assistance claim, an appellant must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶27} The failure-to-comply charge was scheduled for a bench trial at least two different times. The record does not show that Ward expressed a desire to have

his failure-to-comply charge tried before a jury at any time before the day of the trial. Ward cannot establish that counsel performed deficiently by failing to file a timely jury demand when nothing in the record shows that he requested a jury prior to the trial date. Knowing that Ward's eleventh-hour request for a jury trial was untimely, counsel moved for a continuance and to withdraw from representation. When the trial court denied those motions, counsel was left with no choice but to proceed to represent Ward at the bench trial. We cannot say that counsel performed deficiently.

{¶28} In the absence of evidence of a criminal defendant's timely communication to counsel regarding a desire to have a petty offense tried before a jury, counsel's decision to try a petty offense case to the court rather than a jury is a strategic decision and does not constitute deficient performance. *See State v. Todaro*, 11th Dist. Ashtabula No. 2004-A-0002, 2005-Ohio-3400, ¶ 36; *see also State v. Rouse*, 7th Dist. Belmont No. 04 BE 53, 2005-Ohio-6328, ¶ 23 (declining to address the issue of counsel's effectiveness where the record contained no evidence that the defendant had informed counsel of her desire for a jury trial); *State v. Edmonds*, 2d Dist. Montgomery Nos. 24155 and 24156, 2011-Ohio-1282, ¶ 38. We overrule Ward's second assignment of error.

### *Weight of the Evidence*

{¶29} In his third assignment of error, Ward argues that his failure-to-comply and FRA-suspension convictions were against the manifest weight of the evidence. He argues that Sergeant Gehring could not have positively identified him as the driver of the truck.

{¶30} In considering a challenge to the weight of the evidence, we must examine the entire record, weigh the evidence and all reasonable inferences, consider

8

the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶31} Based upon our review of the record, we cannot conclude that the trial court lost its way in finding Ward guilty of the offenses. Before the pursuit, Gehring saw Ward's face reflected in the driver's mirror, and he "confirmed 100 percent that it was Mr. Ward." And after the pursuit ended, Gehring pulled parallel to the truck and had another clear view of Ward from about 70 feet away. The trial court was in the best position to judge the witnesses' credibility, and it was entitled to reject Ward's claim that he was not the driver of the truck and to reject his alibi defense. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Therefore, we hold that Ward's failure-to-comply and FRA-suspension convictions were supported by the weight of the evidence. We overrule the third assignment of error.

### Guilty Plea

{¶32} In his fourth assignment of error, Ward argues that his guilty plea to driving under a 12-point suspension was not knowingly, intelligently, or voluntarily entered. He does not, however, point to any particular failure by the trial court.

{¶33} Ward entered a guilty plea to driving under a 12-point suspension, a first-degree misdemeanor in violation of R.C. 4510.037(J), which is subject to a maximum sentence of 180 days. R.C. 2929.24(A)(1). The offense is a "petty offense" because its prescribed penalty includes not more than six months of jail time. Crim.R. 2(D).

{¶34} Because the plea was entered to a petty offense, the trial court was required, pursuant to Crim.R. 11(E), to inform Ward only of the effect of the plea. *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, paragraph one of the syllabus. To satisfy this requirement, the court was required to inform him that a plea of guilty is a complete admission of guilt. *Id.* at ¶ 25.

{¶35} Here, the trial court informed Ward that "a guilty plea is a complete admission of your guilt to the charge," and Ward indicated that he understood. Because the court properly informed Ward of the effect of his guilty plea, we conclude that his plea was knowingly, intelligently, and voluntarily entered. *See State v. Daniels*, 2015-Ohio-5348, 45 N.E.3d 266, ¶ 15, 17 (1st Dist). We overrule the fourth assignment of error and affirm the trial court's judgments.

Judgments affirmed.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry this date.