[Cite as *Cleveland v. Battles*, 2018-Ohio-267.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 104984

---

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## LA'SHA BATTLES

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2015 CRB 026858

**BEFORE:** Blackmon, J., Keough, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 25, 2018

**ATTORNEY FOR APPELLANT**

Leigh S. Prugh
P.O. Box 450678
Westlake, Ohio 44145


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Cleveland Law Director

By:   Omar Lebron Siddiq
Assistant Prosecutor City of Cleveland
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} La'Sha Battles ("Battles") appeals from her conviction for criminal damaging and assigns the following errors for our review:

> I. The trial court erred in denying La'Sha Battles' Crim.R. 29(A) motion for acquittal in the face of insufficient evidence to prove guilt of the offense of criminal damaging beyond a reasonable doubt.

> II. The trial court erred in finding La'Sha Battles guilty because her conviction is agains[t] the manifest weight of the evidence.

Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.

{¶2} On December 14, 2015, Battles was charged with criminal damaging, in violation of Cleveland Codified Ordinance 623.02(a)(1), based on events that occurred on November 22, 2015. After a bench trial, the court found Battles guilty, and it is from this judgment that Battles appeals.

{¶3} Precious Earley testified that she lives at 3503 Capers Avenue, in Cleveland. At some point, she allowed Battles to temporarily stay with her for "about a week, two." However, Earley's lease did not permit other tenants to live in the apartment, and when she learned of an upcoming inspection, Earley asked Battles to leave. According to Earley, Battles "caught a [sic] attitude" about being asked to leave, although Battles ultimately agreed.

{¶4} On November 22, 2015, Earley went to the store. Battles, Battles's best friend, Ronesha, and Battles's and Ronesha's kids were in Earley's house. Although

Earley's testimony about how many people this totaled is somewhat confusing, she concluded that there were "about seven people" in her home when she left. It was Earley's understanding that everyone would be gone when she got back from the store. Battles did not have a key, and Earley instructed her to leave the door unlocked when she left.

{¶5} Earley was gone for "an hour or so." When she got back, the door was unlocked and nobody was in the apartment. Earley testified that the condition of the apartment was "a mess * * * the house was a wreck." Asked about the condition of her home when she left for the store, Earley testified, "Normal. Everything was in condition." Earley explained that this meant everything was "fixed, working" and "[n]othing was broken."

{¶6} Earley further testified as follows: "I seen [sic] make up all over the walls. I seen, [sic] like, black shampoo/conditioner all that stuff poured in the sink; TV knocked on the floor; the other TV scattered like somebody kicked it; and then the pipes in my little closet broke all up. That's what I saw when I got there." Earley called the police and when they got to her apartment, she stated that Battles "did this." Ultimately, Earley had to pay $70 for the damages to avoid eviction. According to Earley, that same day or the day after, Battles sent Earley the following message via Facebook: "I hope you pass your inspection."

{¶7} Nicketia, who is Battles's aunt, testified on behalf of Battles. Nicketia testified that on November 22, 2015, Battles called and asked Nicketia to pick up Battles at Earley's apartment. When Nicketia arrived, Battles had her "stuff sitting at the door

waiting to be picked up." According to Nicketia, the following people were present when she arrived: Battles, Battles's friend, Earley's boyfriend, "another guy and some other person," and two kids. Nicketia went inside Earley's apartment and saw "[n]othing but — she don't have no furniture [sic], so basically nothing." Nicketia testified that she did not see any damage to or mess in the apartment.

{¶8} Nicketia testified that as they were driving away, Battles's friend said she left her phone at Earley's, so they went back to get it. "The friend had too much stuff in her lap, so [Battles] got out and went in the house, went in came right back out [sic] she said that she didn't see the phone * * * and we left again." According to Nicketia, Battles was in Earley's apartment "[n]ot even two minutes." The next day, Nicketia received a phone call from Earley accusing Battles of "mess[ing] up her apartment."

{¶9} In finding Battles guilty, the court stated: "I had my doubts until [Nicketia] testified. I couldn't figure out how this happened. So [Battles is] found guilty because the witness said [Battles] went back to get the phone and there was no phone. Only have one bag or basket of stuff."

{¶10} On August 24, 2016, the court sentenced Battles to "90 days, $750. * * * So $750 is the fine. I'm going to suspend $550. Well, six months probation, active, pay restitution, $280, lipstick, whatever. * * * — and inactive probation when the restitution is paid and the fee, fine is paid. Goodbye."

## Sufficiency of the Evidence

{¶11} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R.

29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶12} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

## Manifest Weight of the Evidence

{¶13} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to

whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶14}** An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

## Criminal Damaging

**{¶15}** Cleveland Codified Ordinance 623.02(a)(1) states that "[n]o person shall * * * knowingly * * * cause * * * physical harm to any property of another without his or her consent * * *."

## Analysis

{¶16} Upon review, we find that there is sufficient evidence to convict Battles of criminal damaging. Additionally, Battles's conviction is not against the manifest weight of the evidence. In *State v. Apanovitch*, 33 Ohio St.3d 19, 27, 514 N.E.2d 394 (1987), the Ohio Supreme Court held the following*:*

> A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. Consideration of circumstantial evidence as a mitigating factor would inevitably lead to undercutting the underlying conviction itself by implying that a conviction based on circumstantial evidence is inherently less reliable than a conviction based on direct evidence.
>
> In fact, a conviction based upon purely circumstantial evidence may be just
>
> as reliable as a conviction based on direct evidence, if not more so.

{¶17} In the case at hand, there was direct evidence of the criminal damaging to Earley's apartment and circumstantial evidence that Battles was the offender. Nicketia testified that Battles was the last person inside Earley's apartment before it was damaged, and Earley testified that Battles had an "attitude" when asked to leave. Furthermore, Battles sent a Facebook message to Earley stating that she hoped Earley's apartment "passed inspection."

{¶18} Despite the court's comments regarding Nicketia's testimony — which the court heard after Battles moved for a Crim.R. 29 acquittal — we find sufficient evidence in the record to sustain Battles's conviction for criminal damaging. Earley's testimony that Battles had an "attitude," Battles's social media message, and the circumstantial

evidence, if believed, support the trial court's ruling. Accordingly, Battles's conviction is affirmed, and her two assigned errors are overruled.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR