[Cite as *State v. Luther*, 2018-Ohio-1576.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :          Case No.   16CA3742

    vs.                          :

JAMES A. LUTHER,                  :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.  :

_____

APPEARANCES:

Krista Gieske, Cincinnati, Ohio, for appellant.[1]

David B. Beck, Portsmouth City Assistant Solicitor, Portsmouth, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED:4-11-18
ABELE, J.

{¶ 1} This is an appeal from a Portsmouth Municipal Court judgment of conviction and sentence.  A jury found James A. Luther, defendant below and appellant herein, guilty of criminal damaging in violation of R.C. 2909.06(A)(1).  Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN CONVICTING HIM OF

---

[1]Different counsel represented appellant during the trial court proceedings.

CRIMINAL DAMAGING WHERE THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN IMPOSING FINANCIAL SANCTIONS AS PART OF DEFENDANT-APPELLANT'S SENTENCE WITHOUT CONSIDERING HIS ABILITY TO PAY."

{¶ 2} In July 2015, Joshua Brickey reported that appellant struck Brickey's truck with a baseball bat or a pipe. Appellant subsequently was charged with criminal damaging.

{¶ 3} At trial, the parties did not dispute that appellant and Brickey's in-laws, the Eldridge family, share an acrimonious relationship. Appellant and one of the Eldridge daughters, Melissa, were engaged to be married, apparently much to the dismay of the rest of the Eldridge family.

{¶ 4} The parties did dispute, however, nearly every circumstance that surrounded the truck damage. The city's witnesses testified that during the evening of July 18, 2015, Melissa's sixteen-year-old daughter, Ashley, phoned the Eldridge residence and asked her grandfather, Roger Eldridge, to retrieve her and her younger sibling from appellant's residence. Ashley reported that appellant "was having a conniption fit."

{¶ 5} Roger asked his son-in-law, Brickey, to drive him to pick up the grandchildren. They, however, could not locate the grandchildren, but they did encounter appellant. Roger stated that appellant "threaten[ed them] with a ball bat," so they left. Roger explained that as they returned home, they encountered Melissa. Roger stated that Melissa asked him and Brickey to return to appellant's residence in order to retrieve another child.

{¶ 6} Roger testified that he and Brickey returned to appellant's residence and appellant "come [sic] over towards the road" and "threatened [them] with a ball bat." As Roger sat inside Brickey's truck, he "heard a big bang" and then saw appellant fall. Roger explained that he did not know what happened, but "figured [appellant] hit the truck."

{¶ 7} Brickey likewise testified that when he and Roger encountered appellant, Brickey "heard a thump and two other bangs." Brickey observed appellant run away and indicated that appellant had "either a ball bat or a pipe." When Brickey returned home, he noticed the damage to his truck.

{¶ 8} Melissa testified for the defense and disputed Roger's assertion that Ashley wanted him to retrieve her and her sibling due to an argument between Melissa and appellant. Instead, Melissa claimed that the grandchildren "had been asking to go [to the grandparents' house] for a couple of days." Melissa stated that after waiting for Roger approximately forty-five minutes, she drove the children to the Eldridge residence.

{¶ 9} Melissa claimed that she encountered Brickey and Roger on her return-trip home and they advised her that they had been unable to locate the children. Melissa stated that she informed Brickey and Roger that she already had dropped them off at the Eldridge residence.

{¶ 10} Melissa testified that she continued to the residence that she shared with appellant to pick up appellant's child. According to Melissa, she planned to drive the child to Portsmouth, where the child lived. After retrieving the child, Melissa exited the residence and observed Brickey and Roger in the driveway. She told Brickey to leave, but he would not. Melissa stated that Brickey finally moved his truck so that she could exit the driveway.

{¶ 11} As Melissa turned towards Portsmouth, she realized that she may have forgotten

the child's medicine.   When she pulled into a church parking lot to see if she had the medicine, Brickey and her father pulled alongside her.   Melissa testified that the parking lot was well-lit and that she did not see any recent damage to Brickey's truck.

{¶ 12} Ashley testified and denied that she wanted to leave the residence due to an argument between Melissa and appellant.   She also claimed that when she observed Brickey's truck at the Eldridge residence, she did not notice any recent damage.

{¶ 13} After hearing the evidence, the jury found appellant guilty of criminal damaging. The trial court sentenced appellant to serve ninety days in jail, with sixty days suspended, and ordered him to pay a $250 fine, court costs, and $250 in restitution.   This appeal followed.[2]

I

{¶ 14} In his first assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence.   Appellant seemingly does not dispute that the prosecution presented sufficient circumstantial evidence to support his conviction, but rather he contends that the record contains "pervasive" inconsistencies that show that the jury lost its way.

{¶ 15} In general,

"'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.   It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.   Weight is not a question of mathematics, but depends on its effect in inducing belief."'"

---

[2]   On August 10, 2017, this court noted that appellant's original appellate counsel had filed an *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), brief and that this court recently held that we will no longer accept *Anders* briefs.   *State v. Wilson*, 4th Dist. Lawrence No. 16CA12, 2017-Ohio-5772.   We therefore granted original counsel's request to withdraw and appointed new counsel to prosecute the appeal.

*Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th ed.1990).

{¶ 16} "The question to be answered when a manifest-weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. A court that is considering a manifest-weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, — Ohio St.-3d —, 2018-Ohio-493, — N.E.3d —, ¶208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶328. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶31. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶20, quoting *State v. Konya,* 2nd Dist. Montgomery No. 21434, 2006–Ohio–6312, ¶6, quoting *State v. Lawson,* 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing

court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶24; accord *State v. Howard,* 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 17} Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley. Accord Eastley* at ¶12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when ""'"the greater amount of credible evidence"'"" supports it). A court may reverse a judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶328. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387*,* quoting

*Martin,* 20 Ohio App.3d at 175; *accord State v. Clinton*, — Ohio St.3d —, 2017-Ohio-9423, — N.E.3d —, ¶166; *State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 18} Furthermore, "'"[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."'" *State v. Cooper*, 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493 (4th Dist.), ¶17, quoting *State v. Mason*, 9th Dist. No. 21397, 2003–Ohio–5785, 2003 WL 22439816, ¶17, quoting *State v. Gilliam*, 9th Dist. No. 97CA006757, 1998 WL 487085 (Aug. 12, 1998); *accord State v. Chancey,* 4th Dist. Washington No. 15CA17, 2015–Ohio–5585, ¶36, citing *State v. Wilson,* 9th Dist. Lorain No. 12CA010263, 2014–Ohio–3182, ¶24, citing *State v. Martinez,* 9th Dist. Wayne No. 12CA0054, 2013–Ohio–3189, ¶16.   Moreover, a conviction is not against the manifest weight of the evidence even if the "evidence is subject to different interpretations." *State v. Adams*, 2d Dist. Greene Nos.2013CA61, 2013–CA–62, 2014–Ohio–3432, 2014WL3887215, ¶24.

{¶ 19} We additionally observe that "a defendant may be convicted solely on the basis of circumstantial evidence." *State v. Nicely,* 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * ' " *Nicely,* 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5 Ed.1979) 221.

{¶ 20} In the case at bar, after our review of the evidence we do not believe that the jury

clearly lost its way and committed a manifest miscarriage of justice. Instead, we believe that the record contains substantial evidence to support appellant's criminal damaging conviction.

{¶ 21} The criminal damaging statute provides:

(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:
(1) Knowingly, by any means;
* * * *

{¶ 22} In the case sub judice, Roger and Brickey both testified that they observed appellant near Brickey's truck at the time that they heard loud noises. Roger testified that appellant threatened them with a bat. Brickey indicated that after he "heard a thump and two other bangs," he saw appellant run away. Brickey further stated that appellant had a bat or a pipe in his hand. Roger explained that the loud noises led him to believe that appellant hit the truck. After Brickey returned home, he noticed two dents in his truck that had not been present before he encountered appellant that evening. Additionally, Deputy Wilson testified that the two dents appeared to be "fresh." Moreover, Brickey denied that he or someone else intentionally damaged the truck in order to "get [appellant] sent to jail." Furthermore, Deputy Wilson stated that appellant confessed. Even though neither Brickey nor Roger actually observed appellant strike Brickey's truck, this set of circumstances would allow a reasonable person to conclude that appellant struck Brickey's truck with an object and caused the damage. *See State v. Anderson*, 2nd Dist. Montgomery No. 20743, 2005-Ohio-3745, 2005 WL 1714196, ¶12; *State v. Brandt*, 2nd Dist. Montgomery No. 19169, 2002-Ohio-2911, 2002 WL 1332004; *see generally Cleveland v. Battles*, 8th Dist. Cuyahoga No. 104984, 2018-Ohio-267.

{¶ 23} In *Anderson*, for example, the court disagreed with the defendant's assertion that

the evidence failed to support her criminal damaging conviction when the witness did not actually see the defendant throw eggs at the victim's car. In *Anderson*, the defendant allegedly damaged a vehicle by throwing eggs at it. At trial, a witness testified that he observed the defendant throw objects at the victim's vehicle. The witness, however, could not identify the objects being thrown, but the next morning the victim discovered egg yolks and egg shells on and around the vehicle.

{¶ 24} Following her conviction, the defendant appealed and argued that the evidence failed to support her conviction. The defendant contended that the prosecution did not present any direct evidence to show that anyone saw her throw eggs at the victim's vehicle or saw them actually hit the vehicle. The defendant further pointed out that the prosecution did not present evidence to establish that the eggs, in fact, caused the vehicle damage.

{¶ 25} The appellate court disagreed with the defendant. The court noted that although the witness indicated that several other individuals were present at the defendant's residence on the night of the incident, the witness further testified that he observed the defendant standing alone. The court determined that a fact-finder could reasonably infer that the witness observed the defendant throw eggs at the vehicle. The court additionally pointed out that when the victim washed the vehicle the next day, she discovered paint damage where the egg residue had been. The victim indicated that the paint damage had not been present the previous evening. The court thus concluded that a fact-finder could reasonably infer that the eggs caused the paint damage.

{¶ 26} In *State v. Brandt*, 2nd Dist. Montgomery No. 19169, 2002-Ohio-2911, 2002 WL 1332004, the court upheld the defendant's criminal damaging conviction even though the victim

did not actually witness the defendant strike the victim's car windshield. The court determined that the following circumstantial evidence supported the defendant's conviction: (1) the defendant was upset with the victim; (2) the victim heard a popping noise consistent with an object striking a windshield; (3) after the victim heard the popping noise, she noticed the damage to her car; (4) no one other than the defendant was present at the time the victim heard the popping noise (except for a small child); and (5) the investigating officer testified that the damage to the victim's car was "fresh." *State v. Brandt*, 2nd Dist. Montgomery No. 19169, 2002-Ohio-2911, 2002 WL 1332004.

{¶ 27} In *Cleveland v. Battles*, 8th Dist. Cuyahoga No. 104984, 2018-Ohio-267, the court determined that a defendant's criminal damaging conviction was not against the manifest weight when the evidence used to support the conviction was circumstantial. The court determined that the circumstances surrounding the property damage supported the defendant's conviction: the victim asked the defendant to leave her apartment; the defendant displayed an "attitude"; the victim left the apartment for approximately one hour; when the victim returned, she found her apartment had been damaged; the victim's apartment had not been damaged before she left the apartment; and the defendant sent the victim a note stating that the defendant hoped the victim's apartment had "passed inspection."

{¶ 28} Consequently, in the case sub judice even though neither Brickey or Roger testified that they actually observed appellant strike Brickey's truck, substantial circumstantial evidence supports the jury's verdict. We cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse appellant's conviction.

{¶ 29} Appellant nevertheless argues that his conviction is against the manifest weight

due to what he classifies as "pervasive" inconsistencies in the state's witnesses' testimony. He claims that in light of the inconsistencies, the jury should have chosen to disbelieve the state's theory of the case and should have found his theory more believable. We do not believe, however, that any of the alleged inconsistencies surrounding the incident negate the circumstantial evidence that appellant committed the offense of criminal damaging. Instead, this is a matter of witness-credibility. Appellant's defense counsel cross-examined the prosecution's witnesses and pointed out any inconsistent testimony. Defense counsel made the jury well-aware of appellant's theory of the case. Nevertheless, the jury chose to believe the prosecution's version of events. We do not find anything in the record to indicate that the jury's credibility determinations lack a rational basis such that we could conclude that the jury committed a manifest miscarriage of justice by convicting appellant.

{¶ 30} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶ 31} In his second assignment of error, appellant asserts that the trial court erred by imposing financial sanctions without considering his ability to pay.

{¶ 32} We first observe that appellant did not object at sentencing to the trial court's imposition of financial sanctions. He further did not assert that he lacked the ability to pay the financial sanctions. His failure to raise these issue before the trial court means that he forfeited the right to raise them on appeal. *State v. Anderson*, 4th Dist. Scioto No. 15CA3696, 2016-Ohio-7252, 2016 WL 5889176, ¶34; *State v. Newman*, 2015-Ohio-4283, 45 N.E.3d 624 (4th Dist.), ¶40, citing *State v. Mendez*, 7th Dist. Mahoning No. 13MA86, 2014-Ohio-2601, 2014

WL 2725935, ¶11, quoting *State v. Potts*, 7th Dist. Harrison No. 07HA4, 2008-Ohio-643, 2008 WL 435005, ¶7 ("[A]n offender who does not raise his ability to pay a financial sanction at the time the sanction is imposed waives any argument concerning his ability to pay on direct appeal."). We may, however, review appellant's assignment of error for plain error. *Anderson*; *Newman*, citing *State v. Leslie*, 4th Dist. Hocking Nos. 10CA17 and 10CA18, 2011-Ohio-2727, 2011 WL 2225152, ¶27 (applying plain error rule when defendant failed to object to trial court's restitution order); *accord State v. Thomas*, ⸺ Ohio St.3d ⸺, 2017-Ohio-8011, ⸺ N.E.3d. ⸺, ¶32 (stating that Crim.R. 52(B) allows court to recognize plain error "notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court").

{¶ 33} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B) thus permits a court to recognize plain error if the party claiming error establishes (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error is a plain or "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *accord Thomas* at ¶¶ 32–33. For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Henderson v. United States*, 568 U.S. 266, 279, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013); *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, 2016 WL 764409, ¶14. Even when, however, a defendant demonstrates that a plain error or defect

affected his substantial rights, the Ohio Supreme Court has "'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Rogers* at ¶23, quoting *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 34} In the case sub judice, appellant has not presented a plain-error argument regarding the court's imposition of financial sanctions. We generally will not craft a plain-error argument for an appellant who fails to do so. *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, 2017 WL 2257731, ¶34, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010–Ohio–2424, 933 N.E.2d 753,   78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (stating that appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because "'appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"'"); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015–Ohio–2500, ¶9 (explaining that reviewing court will not craft plain-error argument for an appellant who fails to raise one).

{¶ 35} In the case sub judice, we do not believe that any error that the trial court may have committed by failing to consider appellant's ability to pay constitutes an obvious error under existing law. As appellant recognizes, the law regarding a trial court's duty to consider an offender's ability to pay in misdemeanor cases is not settled. *See State v. Daniels*, 1st Dist. No. C-150042, 2015-Ohio-5348, 45 N.E.3d 266, 2015 WL 9392746. Moreover, this court has not yet held that a trial court must consider an offender's ability to pay in misdemeanor sentencing

cases. Consequently, assuming, arguendo, that the trial court erred by failing to consider appellant's ability to pay, we do not believe any such error constitutes an obvious error under existing law.

{¶ 36} Furthermore, appellant did not assert that any error affected his substantial rights. He did not argue that the trial court would have determined not to impose financial sanctions if it had considered his ability to pay.

{¶ 37} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Luther*, 2018-Ohio-1576.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Portsmouth Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.